## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **THOMAS J. TRIBLE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **25-2189-TC-GEB** |
| | ) | |
| **OWNERS INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter comes before the Court on Defendant Owners Insurance Company's Oral Motion to Reduce Plaintiff's Expert Witness Fees ("Motion") **(ECF No. 44)**. At the request of counsel, the Court held a discovery hearing. Plaintiff appeared through counsel Brendan Buckley. Defendant appeared through counsel Brian Bartlett. During the hearing, Defendant raised its Motion. The Court, having reviewed the parties' position statements, the submitted fee statements, as well as the relevant caselaw, and having heard the argument of counsel, **DENIES** Defendant's Motion for the reasons set forth below.

## I.    Background[1]

This case arises from a motor vehicle accident which occurred on November 10, 2020 in Wyandotte County involving Plaintiff and another driver. The other driver's insurance paid Plaintiff its policy limits which Plaintiff alleges did not

---

[1] The facts are taken from Plaintiff's Amended Complaint (ECF No. 27) and the parties' position statements unless otherwise indicated. This background information should not be considered as judicial findings or factual determinations.

compensate him for all damages. He filed suit against Defendant, his own insurer, in the District Court of Wyandotte County, Kansas for payment pursuant to the underinsured automobile coverage under his policy. The policy provides for $1,000,000 underinsured motorist coverage per person and per occurrence. Plaintiff claims damages which exceed the amount of this coverage.

Defendant removed the case to this Court on April 10, 2025. Pursuant to the parties' Scheduling Order, Plaintiff disclosed the following retained expert witnesses on October 3, 2025.[2]

- Patrick D. Griffith, MD, a pain management specialist in Kansas City, MO.

- Howard Aks, MD, a pain management specialist in Overland Park, KS.

- Cori Ingram, BSN, RN, CNLCP, a life care planner in Basehor, Kansas.

Defendant took the deposition of Dr. Griffith on December 8, 2025 which lasted approximately one hour and twenty minutes. It additionally wants to take the depositions of Dr. Aks and Ms. Ingram and objects to the fees charged by each of the three experts. Dr. Griffith charges $3,700 for the first two hours and $925 per half hour after two hours (average hourly rate - $1,850). Dr. Aks charges $2,400 for the first four hours and $500 per hour after four hours (average hourly rate - $550). Ms. Ingram charges $1,500 per hour with payment due one week prior to the deposition date. Defendant offered to pay Dr. Griffith and Dr. Aks $500 per hour

---

[2] ECF No. 35.

and Ms. Ingram $350 per hour with payment after the deposition, based upon the actual time involved. When the experts declined to accept the reduced rate, Defendant raised the matter with the Court. Defendant asks the Court to find the experts' fee rates are unreasonable and reduce the deposition fee rate to the amount it offered to pay the experts.

## II.  Discussion

"A party may depose any person who has been identified as an expert whose opinions may be presented at trial."[3] "Unless manifest injustice would result, the court must require the party seeking" the deposition "pay the expert a reasonable fee for time spent in responding to discovery."[4] There is very little authority, particularly in this District, regarding what constitutes a reasonable fee. However, determining "[w]hat constitutes a reasonable expert witness fee is within the court's sound discretion."[5]

Other district courts in the Tenth Circuit and beyond have adopted a set of factors to assess whether fees charged are reasonable.[6] Those factors are as follows:

> (1) the expert's area of expertise; (2) the education and training required for the expert's insights; (3) the rates

---

[3] Fed. R. Civ. P. 26(b)(4)(A).

[4] Fed. R. Civ. P. 26(b)(4)(E).

[5] *Kernke v. Menniger Clinic, Inc.*, No. 00-2263-GTV, 2002 WL 334901, at *1 (D. Kan. Feb. 26, 2002) (citing *Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 545-56 (D. Ariz. 1999)).

[6] *Burke v. State Farm Mut. Auto Ins. Co.*, No. 21-2512, 2022 WL 1679213, at *1 (D. Colo. Sept. 8, 2022); *Hampton v. Utah Dept. of Corrections*, No. 18-0079-CMR, 2022 WL 22888394, at *2-3 (D. Utah Jan. 31, 2022); *K.G., by and through her mother and next friend Christine C. v. Santa Fe Pub. Sch. Dist.*, No. 12-1209, 2014 WL 12796736, at *1 (D. N.M. Mar. 19, 2014); and *Willis v. Bender*, No. 06-0211, at *3 (D. Wyo. April 12, 2007).

of other comparable experts; (4) the nature, quality and complexity of the proposed discovery; (5) the fee actually being charged to the party who retained the expert; (6) the fees charged by the expert in related matters; and (7) any other factor helpful to the court.[7]

Like in *Kan. Penn Gaming, LLC v. HV Properties of Kansas, LLC*,[8] the parties' position statements base their arguments on the above listed factors, the Court will analyze their arguments in the same manner. "Although courts in this district have not squarely addressed this issue, other courts have found that the party seeking reimbursement bears the burden of demonstrating the reasonableness of the amount claimed."[9] It should be noted, Plaintiff is not the moving party. He is not seeking reimbursement for any amounts he had to pay to his experts for the depositions to proceed or seeking payment on behalf of his experts. It is Defendant who before making payment for any expert deposition seeks to reduce the experts' fees which it views as unreasonable.

> **a.    The Expert's Area of Expertise and the Education and Training Required for the Expert's Insights**

The Court will address the first two, related factors together. After conducting an independent medical exam of Plaintiff and reviewing his medical records and

---

[7] *Burke*, 2022 WL 1679213, at *1.

[8] No. 08-4111-RDR/08-4115-RDR, 2009 WL 3756276, at *2 (D. Kan. Nov. 5, 2009).

[9] *Id.* at *2 (citing *Marin v. U.S.*, No. 06 Civ. 552(SHS), 2008 WL 5351935, at *1 (S.D.N.Y. Dec. 22, 2009) (citing *Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mort. Corp.*, No. 01 Civ. 1812, 2003 WL 21767633 (S.D.N.Y. July 31, 2009) and *New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 468 (W.D.N.Y.2002)); *see also Gonzalez–Bey v. Godinez*, No. 93 C 5152, 2002 WL 1008469, at *2 (N.D.Ill. May 16, 2002) (finding that the party producing the expert had satisfied its burden of demonstrating the fee was reasonable)).

bills related to treatment following the November 10, 2020 accident,  Dr. Griffith offered his opinion regarding the causal connection between the accident and Plaintiff's injuries, the permanent nature of his injuries, the reasonableness and necessity of the treatment, the reasonableness of the bills incurred, and the need for future treatment and costs of same. Dr. Howard Aks also performed an independent medical exam. He opined regarding the reasonable and necessary nature of Plaintiff's treatment and expenses and Plaintiff's future medical care requirements, particularly related to pain management, future surgeries, radiology, and medications and the costs associated with same. And Ms. Ingram prepared a life care plan for Plaintiff.

Dr. Griffith is a licensed medical doctor. He is board certified by both the American Board of Anesthesiology and American Board of Pain Management. He has practiced in the area of anesthesiology and/or pain management for over 30 years. And is currently in practice in North Kansas City. Dr. Aks is also a licensed medical doctor. He is board certified by the American Board of Anesthesiology, American Board of Pain Management, and American Board of Independent Medical Examiners. Dr. Aks practiced in the area of anesthesiology or pain management for 35 years before retiring. He has worked as a medical legal expert exclusively since 2020 in Overland Park. Cori Ingram is an RN with both a Bachelors of Science and Masters of Science in Nursing. Additionally, she is a licensed nurse practitioner and has been a Certified Nurse Life Care Planner since 2012. Prior to working as a life care planner, Ms. Ingram worked as an RN for approximately 15 years. All three

experts have highly specialized education and have 13+ years' experience working in their individual fields.

Defendant does not suggest Drs. Griffith and Aks are not highly trained and specialized in their fields of practice, but questions whether they have any additional training or education to provide causation testimony. Regarding Ms. Ingram, despite being a certified life care planner, Defendant alleges her degrees, licensure, and certifications do not justify her hourly rate. Based on these allegations, Defendant without supporting caselaw, alleges a reasonable fee for each should be tied to what each would make treating patients. The Court is not persuaded.

The plaintiff in *Kan. Penn Gaming* made a similar argument. Plaintiff, there, sought to use how much the expert made in his employment was the "fee" the expert charged on related matters (factor 6). Defendant here argues, based on Department of Labor statistics, what the average anesthesiologist or RN practitioner earns is much less than the expert fees charged by each expert making the fees unreasonable. Judge Sebelius in *Kan. Penn Gaming* found the court could not say "the income [the expert] generates from his [or her] business constitutes 'fees' he [or she] typically charges." The Court believes this analysis is equally applicable to these factors in this particular case. Two of the three experts do not see patients, yet Defendant wants to limit their fees charged as an expert to amounts the average anesthesiologist or RN makes seeking patients. All three experts are highly trained in their areas of practice and have worked from 13-35 years in their specialty. **Where Defendant cannot support its argument their fees should be tied to their earnings as**

practitioners, these two factors weigh in favor of their fees being found reasonable.

### b.    The Rates of Other Comparable Experts

Neither party provided sufficient, relevant evident of the fees charged by other comparable experts. Defendant points to Dr. Aks, as well as Plaintiff's treating pain management specialist as comparators for Dr. Griffiths. It offers no comparator for Dr. Aks or Ms. Ingram beyond the Department of Labor statistics for average earnings of anesthesiologists and registered nurses, which the Court found unpersuasive, *supra*. Plaintiff, while not perfect, did produce comparative fee schedules for each of the experts.

The Court will first address Defendant's argument that Dr. Aks is a relevant comparator for Dr. Griffiths based upon their similar practice areas. In response, Plaintiff alleges Dr. Griffiths' fees are greater than Dr. Aks' fees because he is still in practice and his fee schedule reflects lost opportunity costs forgoing the opportunity to see patients for hours spent working as an expert. Plaintiff cites a case from Iowa state court, *Pierce v. Nelson*, arguing a doctor acting as an expert will expect reasonable compensation and "[i]t is reasonable that the compensation reflect the time away from medical practice."[10] The Court does not find caselaw in the Tenth Circuit, this District, or other districts in the Circuit directly on point. While not deciding whether an expert's fee would reasonably include amounts to

---

[10] 509 N.W.2d 471 (Iowa 1993).

recovery time away from their medical practice, the Court acknowledges the difference in Dr. Griffith and Dr. Aks current employment is significant with Dr. Griffith still in active practice and Dr. Aks being retired from practice and solely working as an expert. Therefore, the Court finds Dr. Aks is not a viable comparator for Dr. Griffith.

The Court will now review to Defendant's argument the Court should compare Dr. Griffith's fee schedule with the fees charged by Plaintiff's pain management treating physician accepts for office visits. For the reasons set forth, *supra*, the Court finds this argument equally unpersuasive as the unsupported argument the experts' fees should be tied to what they do or would make as a treating health care provider.

The Court will turn to the fee schedules offered by Plaintiff. He offered 12 pages of fee schedules for various experts across the country. The collection does, however, include fee schedules for two experts in the Kansas City area – one, a board certified orthopedic surgeon, and the other, a board certified anesthesiologist with a pain management practice. Plaintiff also provided fee schedules for two life care planners, one is a Doctor of Osteopathic Medicine and one from a consulting company which uses teams of physicians and nurse/case managers to formulate life care plans. Neither is located in Kansas. No comparator is offered for Dr. Aks.

The board certified orthopedic surgeon as a comparator for Dr. Griffiths and the Doctor of Osteopathic Medicine for Ms. Ingram suffer from the same deficiency.

They do not have comparable training to make them a good comparator. And the fee schedules for the board certified anesthesiologist in Kansas City and the life planning consulting firm, which provides a fee schedule for non-physician staff, suffer from a separate deficiency. Neither is dated. Because the Court does not know whether the undated fee schedules are current or ten years old, they are not valuable as a comparison. Based on the information provided by both sides, there is only one viable comparator for Dr. Griffith and Ms. Ingram and both are lacking because the fee schedules for those comparators are undated. **Therefore, this factor neither weighs in favor of nor against finding the expert's fees reasonable.**

> ### c.    The Nature, Quality and Complexity of the Proposed Discovery

Defendant downplays the complexity of the "discovery responses" it seeks from the experts. It says it "simply seeks to question them on the foundation and rationale for their opinions in this case." But this misses the point. The complexity at issue is of the substance of the opinions, the causation analysis, the injuries sustained, the plan to treat those injuries over time, and costs associated with same, of which there is no mention. **This factor neither weighs in favor of nor against finding the fees sought are reasonable.**

> ### d.    The Fee Actually Being Charged to the Party who Retained the Expert

The parties provided scant information regarding the fees actually being charged to Plaintiff. Dr. Griffith charged Plaintiff a flat fee of $5,000 for a records review, IME, and to prepare a report. Dr. Aks charged $2,000 and Ms. Ingram

charged $2,500. Dr. Griffith did not keep track of his hours and there is no information provided regarding the time spent by either Dr. Aks or Ms. Ingram. Thus, the Court cannot determine an hourly rate for any of the experts. Additionally, no information was provided by either side regarding what each expert charges for trial testimony, which would be a better comparison of the experts' charges to their own client vis a vis the amounts they charge to the opposing party for providing deposition testimony. **This factor neither weighs in favor of nor against finding the fees sought are reasonable.**

### e. The Fees Charged by the Expert in Related Matters

Neither side provides any information about what these experts charge in other related matters. **Therefore, this factor neither weighs in favor of nor against finding the fees are reasonable.**

### f. Any Other Factor Helpful to the Court

Court's in this District have explicitly held "time spent responding to discovery" under Fed. R. Civ. P. 26(b)(4)(E) (formerly 26(b)(4)(C)(1)) includes "a reasonable amount of time spend (sic) by an expert preparing for a deposition."[11] None of the experts' fee schedules includes a charge for hours spent in preparation for the deposition. While each of the experts' hourly rate is on the high side and Dr. Griffith and Dr. Aks require a minimum number of hours none of the charges for

---

[11] *Boos v. Prison Health Serv.*, 212 F.R.D. 578, 579 (D. Kan. 2002).

preparation time. **This factor weighs in favor of finding the experts' fees are reasonable.**

The factors above weigh in favor of finding the experts' fees are reasonable. The rates charged by each expert are on the higher side of what the Court would find reasonable. However, with the low number of relevant comparators for each expert and the deficiencies in the information about those comparators' fees, any reduction of the fees the Court might impose would be arbitrary.[12]

   g. **Minimum Number of Hours Charged and Advanced Payments**

Defendant argues advanced payments to experts, such as those being requested by Ms. Ingram, are disfavored,[13] as are the flat fees[14] or minimum hour requirement sought by Dr. Griffith and Dr. Aks. Defendant does not cite to caselaw within the Tenth Circuit, this District, or any district within this Circuit in support of its argument and the Court finds none. These are simply additional argument the fees sought are not reasonable. Where Defendant does not rely on precedent in this Circuit in support of these arguments, the Court is not persuaded to veer from the consideration of the factors above.

---

[12] *Kan. Penn Gaming, LLC*, 2009 WL 3756276, at *4.

[13] *See Bartless v. Barbes*, No. 18-0087-RGJ, 2020 WL 6785104, at *2 (W.D. Ky. Nov. 18, 2020) and *Prevost v. Brice*, No. 24-0425-CR, 2025 WL 416892, at *2 (D. Vt. Feb. 5, 2025).

[14] *Almonte v. Averna Vision & Robotics Inc.*, No. 11-1088S, 2014 WL 287586, at *3 (W.D.N.Y. Jan. 24, 2014).

For the reasons set forth above and in the Court's discretion, it **DENIES**

Defendant Owners Insurance Company's Oral Motion to Reduce Plaintiff's Expert

Witness Fees **(ECF No. 44)**.

**IT IS SO ORDERED.**

Dated: December 22, 2025.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge
